FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 SEP -2 PM 4: 17

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| Gary W. Houser and Tina H. Houser, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | Case No. CV-99-PT-1395-E |
| ) | |
| James D. Sollie ) | |
| ) | |
| Appellee. ) | |

ENTERED

SEP -2 1999

Appeal from the United States Bankruptcy Court
Case No. 98-41831
Adversary Proceeding No. AP98-40583

## MEMORANDUM OPINION

This cause comes to be heard on an appeal from a final judgment of the United States Bankruptcy Court for the Northern District of Alabama, Eastern Division in Case Number 98-41831. The sole issue in this case is whether the bankruptcy court erred in holding that the failure of complainants, Gary W. Houser and Tina H. Houser (the "Housers"), to notify the Home Builders Licensure Board (the "Board") in writing by certified mail of a civil action that could have resulted in liability of the Board-administered Recovery Fund (the "Fund") precluded payment from the Fund, despite the fact that the Board was actually aware of the proceedings.

**I. Summary of Claims**

The Home Builders Licensure Law is codified at Section 34-14A-1, et seq. Code of Alabama, 1975 (the "Act"). The portion of the Act that is relevant to this case is § 34-14A-15. Section 34-14A-15 outlines the operation of the Recovery Fund administered by the Board. The statute authorizes the Board to establish a recovery fund for the purpose of allowing aggrieved parties to

5

recover actual economic damages, not including interest and court costs, sustained as a direct result of the conduct of a licensee homebuilder in violation of the Act or the rules and regulations of the Board. The Board is given the authority to compromise or settle a claim against the Fund and has the right to participate in and defend any civil case that may result in liability for the Fund. In connection with that right, § 34-14A-15 requires plaintiffs who may ultimately recover from the Fund to provide the Board with written notice of any civil claim that may result in Fund liability. The statute is fairly specific as to the manner in which a plaintiff is to provide such notice and the required timing for the notice, yet does not explicitly state that notice must be given in the exact manner prescribed. The relevant portion of § 34-14A-15 states as follows:

> When a complaint is filed which may result in liability for the recovery fund, the complainant shall notify the board in writing, <u>by certified mail, when the action is commenced</u>.
>
> When the notice is received, the board may enter an appearance, file pleadings and appear at court hearings, defend or take action it deems appropriate either on the behalf and in the name of the defendant or in its own name. The board may seek any appropriate method of judicial review.

(Emphasis added). The only issue before the court in this case is whether some other form of notice may be sufficient to allow a plaintiff to recover from the Fund. The Housers contend that Board's actual notice of the action was sufficient under the statute, while the Board argues that the statutory notice requirements must be strictly adhered to and that the Housers, therefore, failed to provide the necessary notice. The question thus boils down to whether the notice requirement outlined in § 34-14A-15 represents the exclusive method by which a complainant may provide the board with notice.

**II. Factual Background**

The Housers purchased a newly constructed home in Moody, Alabama from James D. Sollie, a home builder licensed by the Alabama Home Builders Licensure Board, for a purchase price of $94,825.25, in 1995. Problems with the construction of the home soon manifested themselves, and

the Housers filed a consumer complaint against Sollie with the Board on January 16, 1996.[1] They later filed a civil action against Sollie in the Circuit Court of St. Clair County, Alabama. The complaint, filed June 25, 1996, alleged that Sollie had negligently constructed the plaintiffs' home and sought damages for breach of the implied warranty of habitability and for fraud in connection with the sale of the house. The Board did not receive a copy of the Housers' civil action complaint against Sollie until March 19, 1998, almost two years after the complaint was filed.

Sollie apparently made a vigorous defense of the case. The Housers' case against Sollie was eventually set for trial on June 6, 1998. Dan Neel, the Board's Compliance Officer, was served with a subpoena to appear at the June 6 trial on May 26, 1998. The Board filed an objection and motion to quash the subpoena issued to Neel on June 2, 1998 on the grounds that Neel's testimony and the records requested were confidential. The state court case was never heard, however, as Sollie filed a petition in the United States Bankruptcy Court for the Northern District of Alabama, a suggestion of bankruptcy in the state court case, and a notice of removal of the state court case to the bankruptcy court on June 5, 1998. The bankruptcy court ordered the case removed on July 30, 1998. Sollie's bankruptcy case made a final report of no assets on August 6, 1998.

After conducting an investigation, the Board's hearing officer recommended that Sollie's license be conditionally revoked as a result of his gross negligence and/or incompetence in connection with the construction of the Housers' home. The Board voted on August 27, 1998 to adopt those recommendations. The Board rendered an order confirming the recommendation of its hearing officer on September 10, 1998. The order found that Sollie was guilty of gross negligence and/or incompetence in the practice of residential homebuilding, and revoked his license. The revocation was stayed for six months in order to provide Sollie the opportunity to present evidence that he had corrected the construction defects in the Housers' home.

---

[1] A consumer complaint is a statement filed by a homeowner with the Board concerning alleged violations of the Act or the rule and regulations of the Board. It is not tantamount to a court action.

The parties to the adversary proceeding filed a joint report pursuant to Bankruptcy Rule 7026(f) for the exchange of information and a plan of discovery on October 13, 1998. Sollie received a bankruptcy discharge on October 19, 1998, and, on December 10, 1998, the bankruptcy court entered a trial order setting the adversary proceeding for trial on January 8, 1999. The Housers' adversary proceeding against Sollie was tried ore tenus before the Honorable James S. Sledge, Bankruptcy Judge on January 8, 1999, and judgment was rendered in favor of Sollie on the fraud claim and in favor of the Housers on the warranty claim in the amount of $26,250.00 on January 11, 1999. Damages were assessed in the amounts of $21,250.00 for repair costs and $5,000.00 for mental anguish. The Board received a copy of the judgment on January 25, 1999 and Sollie's case was closed on March 9, 1999. The Housers filed a verified claim against the Board's Recovery Fund on March 15, 1999 stating under oath the requirements for recovery under the statute.[2]

Pursuant to an April 13, 1999 hearing, the bankruptcy court denied the Housers' claim for benefits from the Fund on the basis that they had, in neglecting to give the Board notice of the action by certified mail when the complaint was filed, failed to comply with the strictures of § 34-14A-15. The bankruptcy court found that although the Board was aware of a complaint by the plaintiffs against Sollie, the statute required notice of the actual lawsuit via certified mail at the commencement of the suit. The bankruptcy court found that it was required to read the regulatory statute strictly and that the Housers had not satisfied the requirements as set out in the statute. The Housers filed their notice of appeal on April 21, 1999.

---

[2] According to the Board, receipt of the verified claim was the first notice the Recovery Fund had of a civil complaint which *might result in liability* for the Recovery Fund. Nonetheless, the Board does acknowledge having received a copy of the complaint in the Housers' case on March 19, 1998, well before the January 8, 1999 proceeding which resulted in the January 11, 1999 judgment against Sollie. As concluded by the bankruptcy court, the Board appears to have had actual notice of the Housers' claims prior to the disposition of any of the issues in their case. Thus, as noted above, the only issue in this case is whether the notice requirements set out in the statute are absolute or may be supplanted by another form of notice prior to any disposition of a case.

### III. The Board's Argument

#### A. Strict Construction

The Board notes that in Ex parte Alabama Real Estate Commission, 447 So.2d 740 (Ala. 1984), the Alabama Supreme Court found that the provisions of the law related to Alabama Real Estate Commission's Recovery Fund were to be strictly construed. Although the Real Estate Commission's Recovery Fund is separate and distinct from the Board's Recovery Fund, the Board argues that the two funds are substantially similar and that the holding of the Alabama Supreme Court with respect to the construction of one should apply to the other. The Board argues that the decisions in Robinson v. Murphy, 158 Cal. Rptr. 246 (Cal. App. 1979)[3] and Torres v. Texas Real Estate Commission, 605 S.W.2d 394 (Tex. Civ. App. 1980),[4] also support the proposition that, if a plaintiff is to recover from a recovery fund such as the one administered by the Board, there must be strict compliance with the statutory provisions guiding the operation of the Fund.

#### B. Legislative Intent and the Plain Meaning of the Statute's Language

In Ex parte State Department of Revenue, 683 So.2d 980 (Ala. 1996), the Alabama Supreme Court stated:

The cardinal rule of statutory interpretation is to determine and give effect to the intent of the

---

[3] In Robinson, the Court of Appeals found that the right to recover from California's Real Estate Education, Research and Recovery Fund is a statutorily created cause of action, and that a plaintiff has the burden of showing compliance with the statutory provisions governing the administration and operation of the Fund.

[4] The Torres court found that a plaintiff had failed to establish her right to recover under Texas's Real Estate Recovery Fund Act in that her claim did not specifically fall under any of the provisions allowing recovery from the fund. The plaintiff claimed breach of contract by the builder as a result of the builder's failure to complete her home due to the builder's insolvency. The statute allowed recovery only in situations involving violations of specific portions of the Texas Act or "conduct which constitutes fraud, misrepresentation, deceit, false pretenses, or trickery." The court found that the builder's conduct did not fit into any of the statutorily-created rights of recovery, as his insolvency did not constitute fraud, misrepresentation, etc., and thus concluded that plaintiff could not recover from the Texas fund.

legislature as manifested in the language of the statute. Gholston v. State, 620 So.2d 719 (Ala.1993). Absent a clearly expressed legislative intent to the contrary, the language of the statute is conclusive. Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says. IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344 (Ala.1992).

683 So.2d at 982. The Board contends that the language of the Act is clear as to the notice required to establish a claim under the Recovery Fund: a plaintiff is to provide written notice via certified mail at the commencement of the suit. The legislative intent as expressed in the words of the statute is, according to the Board, clear. It is undisputed that the plaintiff failed to meet all of these requirements. The Board argues that, in promulgating § 34-14A-15 of the Alabama Code, the legislature specifically set out clear and unambiguous requirements for plaintiffs involved in cases where the Recovery Fund might be subject to liability, and that this court is therefore bound to deny the Housers' claim against the Fund.

### C. Interpretation of the Administrative Agency

In addressing the influence that an administrative agency's interpretation of a statute should have on the courts, the Ex parte State Department of Revenue Court stated:

> [I]t is well established that in interpreting a statute, a court accepts an administrative interpretation of the statute by the agency charged with its administration, if the interpretation is reasonable. Alabama Metallurgical Corp. v. Alabama Public Service Commission, 441 So.2d 565 (Ala.1983). Absent a compelling reason not to do so, a court will give great weight to an agency's interpretations of a statute and will consider them persuasive. Moody v. Ingram, 361 So.2d 513 (Ala.1978).

683 So.2d at 983.[5] The Board notes that it is a regulatory agency and claims to have interpreted the

---

[5] Similarly, in McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala. 1996), the Alabama Supreme Court, citing Alabama Metallurgical Corp. v. Alabama Public Service Comm'n, 441 So.2d 565 (Ala.1983); Hulcher v. Taunton, 388 So.2d 1203, 1206 (Ala.1980); Employees' Retirement System v. Oden, 369 So.2d 4 (Ala.1979); and Moody v. Ingram, 361 So.2d 513 (Ala.1978), noted that, "The interpretation placed on a statute by the executive or administrative agency charged with its enforcement is given great weight and deference by a reviewing court." (Per Cook, Justice, with two Justices concurring, and two Justices concurring in the result.)

statutory language to mean that when a civil complaint which may result in liability for the Recovery Fund is filed, the complainant must notify the Board, in writing, by certified mail, at the time the complaint is filed. The Board submits that this interpretation is reasonable and that this court should consider it persuasive.[6]

**IV. The Housers' Argument**

In Home Builders Licensure Board v. Sowell, 699 So.2d 214 (Ala. Civ. App. 1997), the court, in construing § 34-14A-2 of the Act, stated:

> Alabama Code 1975, § 34-14A-1 leaves no doubt that the Act was passed to further "the interest of the public health, safety, welfare, and consumer protection," and to prevent the potential "significant harm to the public" from unqualified, incompetent, or dishonest home building contractors. In this regard, it parallels the statutes mandating the licensure of general building contractors, which statutes, as our supreme court stated in Cooper v. Johnston, 283 Ala. 565, 567, 219 So.2d 392, 394 (1969), were primarily enacted "to protect the public against incompetent contractors." Because the Act was intended for the benefit of the public, our caselaw requires that it be construed most favorably to the public. See State Ins. Dep't v. Howell, 614 So.2d 1053, 1056 (Ala.Civ.App.1992); Employers Ins. Co. v. Johnston, 238 Ala. 26, 32, 189 So. 58, 63 (1939).

699 So.2d at 219.[7] The Housers contend that the Sowell decision requires this court to construe the statute at issue in the manner most favorable to them as members of the public. They further argue that, in supplying the Board with a copy of the complaint in March of 1998, they substantially

---

[6] However reasonable this interpretation might be, the Board has not provided any evidence of any rule or regulation decision with respect to its interpretation of § 34-14A-15. So far as this court is aware, the interpretation espoused by the Board was adopted for the purposes of this case and has not, heretofore, been otherwise established in any meaningful manner.

[7] The Sowell case might be distinguishable from this case in that the court in Sowell was forced to provide or seek out a definition for the term "residence" as used in the statute. The issue was whether the term "residence" was meant by the legislature to include garages that were adjacent to, rather than attached to, homes. The court found that, in interpreting this language, it should favor the public and, thus, concluded that an adjacent garage constituted part of a "residence" for the purposes of the statute. Here, unlike in Sowell, the meaning of the words used in the statute is not at issue. The only question is whether the manner of notice provided for in the statute represents the exclusive manner by which a complainant may provide the Board with notice of a suit potentially subjecting the Fund to liability.

Page -8-

complied with the notice requirements of the statute and should not, therefore, be denied its benefits as a result of a rigid interpretation of its language.

The Housers argue that the technical requirements of the statute relied upon by the Board are unnecessary when the purposes of the statute have otherwise been met. Thus, according to the Housers, the requirement that the complaint be delivered to the Board via certified mail is unnecessary when actual notice has been admitted by the Board. The purposes of the certified mail requirement, argue the Housers, are to provide proof of notice and to assure actual notice. The Board's admission that it received the complaint in March of 1998, albeit almost two years late, sufficiently satisfies both purposes. The Housers argue that this court should follow the reasoning employed by the court in Larabee v. Washington, 793 S.W.2d 357 (Mo. App. 1990). In Larabee, the Missouri Court of Appeals held that the plaintiff was entitled to prejudgment interest under a statute that required notice by certified mail before prejudgment interest would be due as a result of the defendant's admission that he had received actual notice via regular mail.[8] Further, the Housers note that in Crummer v. Whitehead, 230 Cal.App.2d 264, 268 (1964), a California District Court of Appeals found that "[n]otice sent by regular mail and actually received, when notice by registered

---

[8] This court notes that the Housers' argument with respect to the Larabee decision is considerably weakened by the fact that the Larabee decision was overruled by the Supreme Court of Missouri's decision in Emery v. Wal-Mart Stores, Inc., 976 S.W.2d 439 (Mo. 1998). In Emery, the court stated:
> Plaintiff relies on Larabee v. Washington, 793 S.W.2d 357 (Mo.App.1990), which held that certified mail was not required where the opposing party does not deny receipt of the offer or had actual notice of the offer. However, when statutory language is clear, courts must give effect to the language as written. Courts are without authority to read into a statute a legislative intent contrary to the intent made evident by the plain language. M.A.B. v. Nicely, 909 S.W.2d 669 (Mo. banc 1995). The court should regard the statute as meaning what it says. State ex rel. Bunker Resource, Recycling and Reclamation, Inc. v. Dierker, 955 S.W.2d 931 (Mo. banc 1997). A court may not add words by implication to a statute that is clear and unambiguous. Asbury v. Lombardi, 846 S.W.2d 196 (Mo. banc 1993).

976 S.W.2d at 449.

...

mail is required, is nevertheless valid notice."

While acknowledging that § 34-14A-15 calls for notice to be given "when the action is commenced," the Housers attack the Board's contention that the notice they provided was not timely. They note that in Birmingham Electric Co. v. Rylant, 174 So. 511 (1937), the Alabama Supreme Court conditionally affirmed a judgment in favor of a passenger on a streetcar who was refused a transfer as a result of the Public Service Commission's rules on railway travel. The rules required passengers to request transfers "at the time that the passenger pays his fare." In Rylant, the passenger did not request a transfer until the car had traveled several blocks. The court held that although the rule itself was reasonable, application of the rule mandated a reasonable interpretation of its requirements and consideration for the circumstances of a given situation. The court found that the word "at" means nearness in place or time, not absolute simultaneity.

The Housers argue that, according to Black's Law Dictionary, 4th Ed., p. 1767, the word "when," as used in § 34-14A-15, has the same meaning as "at the time," and should, in light of Rylant, be given a reasonable interpretation that takes into consideration the surrounding circumstances. They note that the complaint in this case was filed on June 25, 1996, that the Board received a copy of the complaint on March 19, 1998, and that the Board did not take any action in the case until its compliance officer was subpoenaed in May of 1998. The Housers contend that the adversary proceeding in the bankruptcy court was a new beginning and that the Board clearly knew of the removal of the case to the bankruptcy court.

The stated purpose of the prejudgment notice provided for in § 34-14A-15 is to permit the Board to make an appearance in a case where it may be liable to a plaintiff. The Housers argue that, in this case, the Board clearly had ample opportunity to make an appearance and to defend the claim in any manner it saw fit prior to the disposition of any claims. They contend that nothing occurred prior to March 1998 that would have prejudiced the Board's statutory rights and that the Board failed to make an appearance prior to the bankruptcy proceeding because there was no reason for it to do so. According to the Housers, the Board knew of the status of their claims against Sollie as a result

Page -10-

of the license revocation proceedings that took place in August of 1998 and chose not to participate because Sollie was already represented by competent counsel and because he (Sollie) made a vigorous defense at the adversary proceeding.[9]

Thus, the Housers argue that the circumstances of this case call for this court to conclude that the Board had ample notice of the civil case against Sollie and that there was substantial compliance with the notice requirements set out in § 34-14A-15. They maintain that the rigid statutory interpretation advocated by the Board is unjustified in that it would frustrate the stated purposes of the Act.

### Conclusions of Court

The issues of this case have now been clearly resolved by <u>State of Alabama Home Licensure Board v. Bradford</u>, 1999 WL 521883 (Ala. Cir. App. July 23, 1999). The Judgment of the bankruptcy court will be affirmed.

This 2nd day of September, 1999.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] The Housers also argue that the entry of the judgment against Sollie did not prejudice the Fund in any way, as the court is required by the statute to go behind the judgment and determine the amount which may be due from the Fund for actual economic losses incurred by a claimant. They note that the statute requires due process to the Fund by requiring notice and a full hearing to determine what amounts, if any, may be due to the homeowner. Thus, the Housers argue that the Fund's failure to actively participate in the adversary proceeding should not influence this court's decision, especially in light of the fact that the Fund had notice of the claim by that time.